[No. 30039. Department One. April 4, 1947.]

B. P. THOMAS *et al., Respondents,* v. DAVID R. HARLAN, *Appellant.*[1]

[1]Reported in 178 P. (2d) 965.

*Bertil E. Johnson* and *Ralph M. Rogers,* for appellant.

*F. A. Latcham,* for respondents.

SIMPSON, J.—This litigation involves the ownership of a strip of land twenty feet in width, and three hundred twenty-eight feet long, lying along the south line of land owned by plaintiff.

The complaint alleged that: Plaintiff owned certain real property in Pierce county immediately adjacent to the real property owned by defendants. In the year 1929, the then owner of defendant's property constructed a fence along the north line of the tract now owned by defendant, which fence was twenty feet south of the line between the properties belonging to the parties to this action. Plaintiffs' predecessor in interest believed the fence to be the north line of defendant's tract, and the south line of the tract owned by plaintiffs. The plaintiffs and their predecessors have been in open, notorious, continuous, and uninterrupted possession of the twenty-foot strip of land under claim of right since the year 1929. Plaintiffs then prayed for a decree quieting title in themselves to the twenty-foot strip of land.

The answer denied generally the allegations of the complaint and then set out, as a further answer, the following: The fence referred to in the complaint was a three-strand barbed wire fence and did not enclose any property, but extended in a line the width of defendant's property. It was never a line fence, nor was it claimed to be such, and it was so known and understood by plaintiffs. The plaintiffs

admitted that they did not know the location of the true line between their property and that of defendant.

The reply put in issue the allegations contained in the answer, and then alleged

" . . . that said fence was constructed by the defendant's predecessor in interest, who agreed with plaintiffs' predecessor in interest that said fence marks the boundary of the properties of the parties hereto, and the defendant is estopped from denying the same."

A trial to the court resulted in a decree favorable to. plaintiffs. The decree was founded upon findings of fact and conclusions of law made and entered by the court.

Defendant in appealing makes ten assignments of error, which attack the findings of fact and the decree.

Appellant acquired the land July 26, 1943, from Carrie C. Cline. Mrs. Cline and her former husband, Carl A. Rainwater, had received a deed to the property September 2, 1931, as a result of a contract of purchase dated March 28, 1929. Respondents' title to their property was by way of deed from W. H. Schliiter and wife, dated December 15, 1938, they having contracted to purchase the land April 1, 1938. The predecessors in interest of Mr. and Mrs. Schliiter, as evidenced by deed of August 23, 1932, were E. A. and Mary Feddersen, the father and mother of Mrs. Schliiter, who in turn had obtained their title September 2, 1919.

Prior to, and at the time the Feddersens acquired title, the entire property was unoccupied, unimproved, wild prairie land. The only improvement made by them was a one-room building, which was used occasionally for recreational purposes. The location of the building is uncertain, though it is clear that it was not near the disputed property. The strip of land in controversy was never occupied until 1939, at which time respondent Farris erected upon it a garage and planted small firs and shrubs along the fence line.

A map introduced in evidence, supplied by a competent surveyor, Mr. D. H. White, who had been employed by respondent Farris, shows, as does the testimony of the

surveyor, that the fence extending east and west is twenty feet south of the true boundary line between the properties owned by appellant and respondents, but lacks eight feet of extending the entire distance east and west.

Mrs. Cline, called as a witness for respondents, testified that in 1929 she and her former husband, Carl A. Rainwater, stepped off, and by tape measure located a place where they desired to build a fence on the north side of their property. They did not locate any survey points, but started from the edge of the state highway. Asked about their idea of locating a permanent fence line, she replied in the negative to the question, "You had no idea that would be the actual line when you put that there"?

To be definite, we quote a portion of Mrs. Cline's testimony. Referring to Feddersen, Schliiter, and Farris, she testified:

"A. We saw him, I should say, about two months afterwards. Q. What was the conversation between you and Mr. Fedderson relative to that fence? . . . A. Well he, Carl, asked him about the fence and he said, well, that was right as far as he was concerned. . . . Q. Was there any further conversation between Mr. Cline and Mr. Fedderson relative to that fence? A. No, sir. . . . Q. Did you explain to Mr. Fedderson how you arrived at that line, did you? A. Yes, sir. Q. And did you tell him you had used a tape, and so forth? A. Yes, sir. Q. And did he agree with you on that? A. He said it was okeh.

. . .

"Q. Did you have any conversation with Mr. Schleiter, who was the son-in-law of Mr. Fedderson and who bought the property from his father-in-law? . . . A. Do I remember if we had any conversation with the son-in-law, did you say? Q. Yes, do you remember Mr. Schleiter who bought the property from Mr. Fedderson? A. No. Q. Did you have any conversation with Mr. Farris when he moved onto the property? . . . A. No, sir, we did not have any conversation over that line, no, sir. Q. Well, where the fence is, I am speaking of now. A. No, sir, we did not on that, no. . . . Q. Did you say anything to him about the fence or the garage, do you recall? A. No, sir. Q. Did you have any conversation with him relative to the line of the property? A. Not that line, no."

Respondent Thomas, who is a surveyor and civil engineer, together with his uncle, respondent Farris, measured the ground and came to the conclusion, as testified to by Thomas, that the fence was within a foot or two of the actual line between the two properties. When Thomas was asked if he was disagreeing with Mr. White's survey, he answered:

"No, I am not. To explain that I will have to explain to you that property is described there by metes and bounds, which was the description of our property, or by a legal subdivision, which is the description of the property that Mr. Harlan owned. Realizing that, to find the lines of a legal subdivision it is necessary to go clear back to corners on both sides, the quarter corners, the quarter corners of the section and re-run all of the lines and reapportion all of the lines, and, in fact, undertake to survey and renew the lines according to the legal subdivisions that would control, but I did find that by measuring around the property the actual course according to our description came approximately on the fence line. Q. When you say 'approximately', you mean it may have been off? A. Within a foot or two."

Farris testified:

"Well, let's see, I think Mr. Longstreth and I went out there, I think it was maybe about a month before that we were out there. Q. Did you examine the ground and the area? A. Yes, sir. Q. Did you have a talk with any of the people in the surrounding properties? A. Yes, sir. Q. To whom did you speak? A. To Mr. and Mrs. Cline. Q. Did you have any conversation with Mr. and Mrs. Cline as to the fences? A. Yes, sir. Q. Between your properties? A. Yes, sir. Q. What was that conversation? A. Well, they said that was the line. Mr. Schleiter said our property went back to—they said that fence was the line."

In either 1944 or 1945, respondent Farris borrowed appellant's deed, took it to Mr. White, and ordered him to survey the land in order to ascertain the true line between the properties.

Respondents brought this case upon the theory that they had acquired the twenty-foot strip by adverse possession. The trial court did not agree with that contention, but based its decision upon the ground that Mrs. Cline was

estopped to deny that the fence indicated the true boundary line. The court's decision is best reflected in the following statement contained in his memorandum opinion:

"The defendants' grantor for over ten years, i. e., from shortly after March 28, 1929, until July 26, 1943, adopted the fence as the north line of her property. When Farris commenced the erection of his garage in 1938 or early in 1939, she stood by and permitted its erection without any complaint; she advised him when he purchased the property that it was the line. This fence was not built at a time when the true line was known, it was used by all concerned as the line of demarkation between the parties at all times without question and without knowledge of where the true line existed until the survey was made less than one year prior to the trial of this action. In the opinion of the Court, defendants' grantor was estopped at the time she conveyed to the defendant to claim the fence was not the boundary of her property; that it was acquiesced in as the boundary for over ten years and the defendant is likewise estopped to claim to the true line as the fence has been acquiesced [in] by all except the defendant as the boundary line for such a length of time as to constitute the true boundary line between the properties."

Respondents in their brief do not press their right to the title by adverse possession, but follow the theory advanced by the trial court. The question, then, is narrowed to the proposition of whether respondents have acquired the strip of land by acquiescence and estoppel.

Respondent Thomas, a surveyor and civil engineer, is placed in a peculiar position. First he says that the fence was the true line within a "foot or two," and then says that he acquired a twenty-foot strip of land for which he did not pay, because Mrs. Cline had allowed Farris to build a garage on the strip and the parties for ten years had acquiesced in the idea that the fence was a boundary line. To say the least, he was inconsistent.

First, was appellant estopped by Mrs. Cline's statements relative to the location of the line fence? In this regard, it is of interest to note that Mrs. Cline, respondents' witness, denied that she had told Farris that the fence represented the line between their properties.

■ Estoppel is a preclusion in law, which prevents one alleging or denying a fact in consequence of his own previous act, allegation, or denial, of a contrary tenor. Equitable estoppel, or estoppel *in pais,* is that condition in which justice forbids that one speak the truth in his own behalf. It stands simply as the rule of law which forecloses one from denying his own expressed or implied admission, which has in good faith, and in pursuance of its purpose, been accepted and acted upon by another. To constitute estoppel *in pais,* three things must occur: (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

■ Title to real property is a most valuable right which will not be disturbed by estoppel unless the evidence is clear and convincing. *Tyree v. Gosa,* 11 Wn. (2d) 572, 119 P. (2d) 926.

■ There is no need to cite authorities to decide the question of estoppel, for the simple reason that respondents did not rely upon the statement they attributed to Mrs. Cline to the effect that the fence indicated the boundary line. This is evident from the fact that respondents, one a surveyor, made a survey of the property in order to find the true line. It is too impossible to believe that respondent Thomas found the boundary line to be within a foot or two of the fence.

The next point for consideration is: Did the fence line become the dividing line by acquiescence?

■ It is a rule long since established that, if adjoining property owners occupy their respective holdings to a certain line for a long period of time, they are precluded from claiming that the line is not the true one, the theory being that the recognition and acquiescence affords a conclusive presumption that the used line is the true boundary. Most courts have laid down the rule that the time required to elapse before a line is established, is the time necessary

to secure property by adverse possession. *Dwight v. Des Moines,* 174 Iowa 178, 156 N. W. 336; *Renwick v. Noggle,* 247 Mich. 150, 225 N. W. 535; *Gulf Oil Corp. v. Marathon Oil Co.,* 137 Tex. 59, 152 S. W. (2d) 711; *Hotze v. Ring,* 273 Ky. 48, 115 S. W. (2d) 311; *Grants Pass Land & Water Co. v. Brown,* 168 Cal. 456, 143 Pac. 754; *Steinbruck v. Babb,* 148 Kan. 668, 84 P. (2d) 907; *Woll v. Costella,* 59 Idaho 569, 85 P. (2d) 679.

In the absence of an agreement to the effect that a fence between the properties shall be taken as a true boundary line, mere acquiescence in its existence is not sufficient to establish a claim of title to a disputed strip of ground. *Dibirt v. Bopp,* 4 Cal. App. (2d) 541, 41 P. (2d) 174. In that case, it was held that one who had purchased a lot separated from the adjoining property by fence, and allowed the fence to stand for more than twenty-five years, at which time he discovered that his deed called for three additional feet of ground, was not estopped from claiming the additional land because of the fact that the evidence indicated a mere acquiescence in the existence of the fence, and failed to show a definite agreement to accept its location as the true boundary line.

In all cases, it is necessary that acquiescence must consist in recognition of the fence as a boundary line, and not mere acquiescence in the existence of a fence as a barrier. *Phelan v. Drescher,* 92 Cal. App. 393, 268 Pac. 465; *Moniz v. Peterman,* 220 Cal. 429, 31 P. (2d) 353; *Roberts v. Brae,* 5 Cal. (2d) 356, 54 P. (2d) 698; *Staniford v. Trombly,* 181 Cal. 372, 186 Pac. 599.

Feddersen owned respondents' property from September 2, 1919, to August 23, 1932. All that happened between Mrs. Cline and her then husband, Mr. Rainwater, and Mr. Feddersen, was that the Rainwaters explained that they had located the fence by certain measurements taken from the highway. All that Feddersen said was that it was right as far as he was concerned, and it was okeh. Mrs. Cline testified that she did not talk about the fence to Schliiter, who owned respondents' property from August 23, 1932, to December 5, 1938. Mr. Schliiter was called as

a witness by respondents, but was not asked concerning any conversation had with Mrs. Cline or her former husband.

In view of the evidence and the well-defined rules of law, we are compelled to hold that the boundary line was not fixed by acquiescence.

The judgment is reversed, with instructions to enter a decree fixing the true boundary line as found by Mr. White. Respondent Farris will be allowed thirty days in which to remove his garage.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and ABEL, JJ., concur.

