[No. 33433.   Department Two.   April 19, 1956.]

BEULAH MARIE SKOV et al., *Respondents*, v. MACKENZIE-RICHARDSON, INC., *Appellant*.[1]

[1]Reported in 296 P. (2d) 521.

*Miller, Jansen & Sackmann*, for appellant.

*Cross & Whitmore*, for respondents.

ROSELLINI, J.—This is a suit in equity to re-establish a boundary which, according to the allegations of the complaint, had become lost or obscure, instituted under the provisions of Laws of 1886, §§ 1 and 2, pp. 104, 105 [*cf.* RCW 58.04.020, 58.04.030]. The respondents are the owners of the northwest quarter of section 8, and the appellant is the owner of the northeast quarter of section 7, township 15 north, range 38 east, W. M., Adams county, Washington. The appellant denied that the boundary had become lost or obscure and affirmatively alleged that it had been fixed and certain for a period of more than ten years last past.

The court appointed a commission composed of three disinterested persons, at least one of whom was a practical surveyor, to survey, erect, establish, and properly mark the boundaries and return to the court a plat and field notes thereof, together with a report, all in accordance with the provisions of § 2 of the act. The parties stipulated that the commissioners were qualified but reserved the right to object to their report.

The trial court accepted the report of the commissioners and based its findings thereon, with one modification. The northwest corner of section 8 (being also the northeast

corner of section 7) was set by the court at a point 40 feet east of the point recommended by the commissioners as the true corner. The commissioners had established the corner in the center of an old county road which ran north and south between the two sections, on the principle that such roads were generally built to tie in with section corners. However, the testimony of long-time residents of the area established that the county road in question had veered westerly from the section line at a point approximately one half mile north of the section corner and that it by-passed the corner to the west. This had been done, they testified, to utilize a natural cattle culvert, or underpass, which lay to the west of the section line between sections 5 and 6 and north of the disputed section corners.

The appellant assigns error to the court's denial of its motion to reconsider the oral memorandum opinion, its motion to reopen for further testimony and cross-examination, and its motion for a new trial; all of which motions were based upon the recanting affidavit of the witness A. E. Hooper and the contention that the testimony of a newly discovered witness, R. J. Hooper, would change the decision of the court. A. E. Hooper was the only witness who had testified positively that there had once been a government monument 40 feet east of the center of the old county road.

A new trial is not a matter of right. Whether a new trial should be granted or denied is a matter within the discretion of the trial court, and this court will not intervene unless there has been a manifest abuse of discretion by the trial court. *Leer v. Cohen*, 10 Wn. (2d) 239, 116 P. (2d) 535; *State v. Powell*, 51 Wash. 372, 98 Pac. 741; *State v. Wynn*, 178 Wash. 287, 34 P. (2d) 900. This is true whether the ground urged for granting the new trial is newly discovered evidence, recantation of an important witness, or any of the other grounds which are available to a litigant. In *State v. Wynn, supra* (quoted at length and followed in *State v. Snyder*, 199 Wash. 298, 91 P. (2d) 570), this court said:

"Recantation by an important witness of his or her testimony at the trial does not necessarily, or as a matter of law, entitle the defendant to a new trial. The determination of such matters rests in the sound discretion of the trial court, and its action will not be set aside except for clear and manifest abuse.

"The trial judge is in a peculiarly advantageous position, under the prevailing circumstances, to pass upon the showing made for a new trial. He has the benefit of observing the witnesses at the time of the trial, is able to appraise the variable weight to be given to their subsequent affidavits, and can often discern and assay the incidents, the influences, and the motives, that prompted the recantation. He is, therefore, best qualified to determine what credence or consideration should be given to the retraction, and his opinion is accordingly entitled to great weight. If the rule were otherwise, the right of new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court."

The appellant relies upon the case of *State v. Powell, supra*, an appeal from a conviction of rape, wherein the prosecuting witness had recanted. We held that the trial court had abused its discretion in refusing to grant a new trial, since the testimony of the prosecuting witness was the only evidence of the crime charged. The case should be controlling here, the appellant contends, since the witness A. E. Hooper was the only person who testified that the original government monument at the corner in question was 40 feet east of the center of the county road.

In the affidavit of A. E. Hooper, submitted by the attorneys for the appellant after the trial, the following statement appears:

"That the corner of Sec. 5-6-7 & 8 in 15—38 E W M is considerably further than 40 ft East of said culvert or cattle pass than I stated in my testimony. I had never measured the distance and relied entirely on my memory. I did not have a full opportunity to examine the location until the date of this affidavit."

It appears that the witness went to the area in dispute and examined it, both before and after the trial. At the trial, he testified that the cattle culvert in question was

about 40 feet west of the *section line* between sections 5 and 6 (maybe a foot or two less) and approximately 300 feet north of the corner adjoining sections 5, 6, 7 and 8, and that the monument at this corner was 40 feet from the center of the old county road. It is apparent from a comparison of this testimony with the statement in the affidavit that Mr. Hooper did not change his testimony regarding the distance from the center of the county road to the monument, and, in fact, that he did not change it as to the distance from the culvert to the section corner. Earlier in his affidavit, he stated that the culvert was 348 feet from the section line (a statement contrary to all the other evidence), rather than approximately 40 feet; but this does not amount to a denial that, at the point where the road ran opposite the section corner, the corner was 40 feet from the center of the road.

It is true that in the same affidavit Mr. Hooper retracts other testimony which he gave at the trial, stating that he was mistaken in regard to the direction taken by the old county road in section 7, and in stating that there had once been a fence between sections 7 and 8. But neither of these matters is contained in the findings of fact, and it is evident that the trial court did not consider them in reaching its decision.

Another long-time resident of the area testified that he remembered the time when the county road was built and that it ran very close to the section corner.

We find nothing in the recanting affidavit which would compel the court to alter its decision as to the location of the original section corner, and consequently no abuse of discretion in refusing to reconsider, reopen, or to grant a new trial on the basis of the affidavit.

In its affidavit in support of the motion to reopen to take the testimony of R. J. Hooper, the appellant alleged that it was unaware of Mr. Hooper's existence until the opening day of the trial. His proposed testimony was to the effect that, at the time he owned both sections 7 and 8, the land was plowed on section 8 to a line which was considered the boundary between the two sections, and that this plowline

was still visible. The appellant had attempted at the trial to establish this plowline as the true boundary, a contention which was rejected by the court. Aside from the fact that there was slight showing of due diligence on the part of the appellant in securing this testimony prior to the trial, the evidence is merely cumulative.

To justify granting a new trial on the ground of newly discovered evidence, it must appear that the evidence will probably change the result if a new trial is granted, that it has been discovered since the trial, that it could not have been discovered before the trial by the exercise of diligence, and that it is material to the issue and not merely cumulative or impeaching. *Doss v. Schuller*, 47 Wn. (2d) 520, 288 P. (2d) 475.

Since the cause was tried to the court, it was not called upon to speculate as to whether the proffered testimony would change the result. Again, we find no abuse of discretion in the court's refusal to grant a new trial on the ground of newly discovered evidence.

The appellant has assigned error to the findings of fact pertaining to the location of the boundaries of section 8, which, as stated above, are based primarily on the findings of the court-appointed commissioners. In support of this assignment, he argues first that the evidence preponderates in favor of a finding that the boundary of the northwest quarter of section 8, being also the boundary of the northeast quarter of section 7, had been established by acquiescence and recognition and by oral agreement. This theory does not appear in the pleadings, and facts embodying such a theory were neither found by the trial court nor contained in any proposed finding of fact of the appellant.

The appellant proposed a finding that the original plowline between the quarter sections was obliterated by the respondents' predecessor in interest, and that a south projection of the fence between sections 5 and 6 runs a course which approximates the original plowline and the fence constructed in 1953 by the appellant. Neither of these findings, had they been made, would have been sufficient to

justify a conclusion that the boundary had been established by agreement or by acquiescence.

█ Since section 8 was plowed by the respondents and their predecessors, and since section 7 had never been used for any purpose other than occasional grazing, there was no evidence of any act of the appellant, acquiesced in by the respondents, or the mutual establishment of a boundary of any kind, and neither party testified to an oral agreement.

In *Thomas v. Harlan*, 27 Wn. (2d) 512, 178 P. (2d) 965, 170 A. L. R. 1138, relied upon by the appellant, we said:

"In the absence of an agreement to the effect that a fence between the properties shall be taken as a true boundary line, mere acquiescence in its existence is not sufficient to establish a claim of title to a disputed strip of ground. *Dibirt v. Bopp*, 4 Cal. App. (2d) 541, 41 P. (2d) 174. In that case, it was held that one who had purchased a lot separated from the adjoining property by fence, and allowed the fence to stand for more than twenty-five years, at which time he discovered that his deed called for three additional feet of ground, was not estopped from claiming the additional land because of the fact that the evidence indicated a mere acquiescence in the existence of the fence, and failed to show a definite agreement to accept its location as the true boundary line.

"In all cases, it is necessary that acquiescence must consist in recognition of the fence as a boundary line, and not mere acquiescence in the existence of a fence as a barrier. [Citing cases.]"

It is significant that, in that case, a fence had been in existence on the supposed boundary line, whereas in this case no such barrier existed prior to 1953.

In the present case, the evidence tended to show that, for many years, the owners of the adjoining tracts had not known where the true boundary lay, and that until a fence was constructed by the appellant, in 1953, neither had considered that there was any pressing need to determine it. Under these circumstances, the trial court properly established the boundary according to what it concluded was the best evidence of the original boundary.

Two surveys, one prepared by the commissioners and the other by Perk Randall, a licensed surveyor, were introduced

in evidence. Although the appellant proposed a finding that there were errors in both surveys, it now contends that the rejected survey was the best evidence and should have been accepted by the trial court. Both surveyors admitted that it was impossible to establish the original boundaries with exact accuracy without conducting a new survey of the entire area, since many of the government monuments had been lost.

Their proposed boundaries were based upon slightly different theories. Had the court accepted the Randall survey, the length of the north boundary of section 8 would have been only 4,951 feet, whereas, the length of the north boundary of section 7 would have been 5,629 feet. The standard width of a section is one mile, or 5,280 feet. As established by the court, the north boundary of section 8 is 5,300 feet in length and the north boundary of section 7 is 5,280 feet. In view of the inequity which would result if the Randall survey were adopted, we cannot say as a matter of law that the court erred in accepting the survey prepared by the court-appointed commissioners, with the slight modification referred to above, which conformed generally to the impressions of other witnesses.

The findings of the trial court, made on conflicting testimony, will not be disturbed unless we can say as a matter of law that the evidence preponderates against them. *State ex rel. Carroll v. Seattle Hotel Bldg. Corp.*, 41 Wn. (2d) 595, 250 P. (2d) 982. This is not such a case.

The judgment is affirmed.

HAMLEY, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.