[No. 38804.    Department One.    September 28, 1967.]

JEAN E. HOUPLIN, *Appellant*, v. GLENN STOEN *et al.,*
*Respondents.*\*

*James R. Young* and *J. Lael Simmons,* for appellant.

*Terry V. Bernard* and *Black, Christensen & Nielsen*
(*Andrew T. Nielsen,* of counsel), for respondents Myers.

WEAVER, J.—This is an action to quiet title; it involves a
boundary dispute between adjacent landowners. Plaintiff's
property is in the south portion of the S.W. 1/4 of section 3,
township 27 north, range 6 E.W.M. in Snohomish County. It
is adjacent to and north of defendant Myers's property,
which is in section 10 in the same township and range.

It is not necessary to burden this opinion with a detailed
description of the land.[1] A written stipulation lays the
factual foundation for the legal question involved. The par-
ties stipulated (a) that the *true section line* between their

\*Reported in 431 P.2d 998.

[1] We have difficulty reconciling the legal description of the land of
each party as described in the pleadings, the corrected decree of March
9, 1966, and the survey maps which the parties stipulate to be correct.

properties is a line commencing at the south quarter corner of section 3 and extending south 81°54'44" west, 2,597.61 feet, to the southwest corner of section 3; and (b) that an existing fence is on a line commencing at the same point of beginning, and extending south 87°44'50" west, for approximately 618 feet. Thus, the line of the existing fence is north of the true section line between sections 3 and 10. In short, the owner of the land in section 3 fenced *less* land than he owned.

A portion of the disputed area between the fence line and the true section line now contains a rock quarry. Defendants Stoen allege that they are the owners of leases permitting them to quarry rock from the lands of both plaintiff and defendant Myers; that they are "neutral" in this boundary dispute but stand ready to pay royalties to the person entitled thereto; and that they will make any accountings the court may desire.

Gustav W. Hallstrom, a former owner of the property now owned by plaintiff, had Spike Murdock survey his land in 1935. Mr. Hallstrom then erected the fence to which reference has been made. The fence line, as established by Murdock, was not on the correct government-survey line,[2] *although Mr. Hallstrom thought it was.* He testified (by deposition) that his main purpose in building the fence was to keep in cattle, pigs and horses.

Mr. Hallstrom identified Pope and Talbot and the state as owners of the properties to the south of his land, but the record does not contain a description of its chain of title. He moved from the property in 1940, rented it to several tenants, and sold it in 1951. There were two intervening

---

[2]There is nothing in the record to support the trial court's finding that Mr. Murdock was a "licensed surveyor." In his oral opinion, the trial court said:

"Now I do not know whether or not counsel is familiar with Spike Murdock's surveys. It is quite general knowledge in this county that probably he was wrong more times in his surveying than he was correct. So, it is not surprising to me that when he surveyed for Mr. Hallstrom he did not survey the same line as the Government survey."

owners between Mr. Hallstrom and plaintiff, who purchased the property in 1953.

The land to the south of the fence on plaintiff's property has been described as wild and unoccupied. It has never been cultivated, although there is evidence that a few trees had been cut for personal use and a few cattle had been pastured occasionally.

There is no evidence that Mr. Hallstrom or the two intervening owners ever discussed the location of the 1935 fence with any owners of the property to the south prior to defendant Myers's purchase of it in 1952. Mr. Myers testified that plaintiff had not talked to him about the boundary between their properties.

At the end of the trial, the trial judge announced an accurate and well-considered oral opinion. His pronouncements are meaningful. He stated that the evidence was not sufficient to support a finding of adverse possession. We agree.

He remarked that:

> There is no evidence in the record as to any claim by anybody only to the south of such line—as to whether or not they acquiesced in such and the record is devoid of any evidence until Mr. and Mrs. Myers took possession of the southerly property to the south of plaintiff's involved in this matter.

We reiterate that defendant Myers testified plaintiff had not talked to him about the boundary between their properties. This supports the trial judge's observation that:

> There is no evidence in this case of any agreement by any property owner to treat such [the fence] as the true boundary, even though I am certain that Mr. Hallstrom intended such to be the true boundary, . . . .

Further, the court said:

> [T]his court *could not find that there had been acquiescence by this plaintiff* as to the fence being the true boundary line *for a period of ten years*. (Italics ours.)

With accuracy and complete understanding of the issue presented, the trial judge concluded that

the sole question involved is whether or not under this evidence there has been sufficient acquiescence in the fence line to constitute it as the true boundary line of the property.

Concluding that there was not sufficient evidence of acquiescence to deprive plaintiff of his real property, the trial judge announced that he would enter judgment for plaintiff.

When plaintiff presented his findings of fact, conclusions of law, and judgment, the trial judge announced that he had changed his mind; he entered a judgment which quieted title to the disputed area in defendant. No reason for this 180 degree change of course appears in the appellate record.

In short, the trial court has decreed that the only reason plaintiff loses a valuable part of his land is that a prior owner made an honest mistake—he built a fence and depended upon inaccurate information. No one, other than plaintiff, has relied upon this mistake to his detriment.

We conclude that the trial court was right the first time.

The instant case does not concern any of the statutory means by which title to real property is transferred from one owner to another.[3] It deals with a court-made rule of law which, in certain circumstances, transfers title of real property from one to another and establishes boundary lines by parol evidence[4] based upon the theory of acquiescence. One need only make a cursory examination of exten-

---

[3]Conveyance by deed, RCW 64.04.010, 020, the forerunner of which was enacted by the first territorial legislature as Laws of 1854, p. 402. It was undoubtedly passed for the same reason the 1677 English Statute of Frauds was enacted—"for the prevention of many fraudulent practices which are commonly endeavoured to be upheld by perjury and subornation of perjury." 6 Holdsworth's History of English Law (2d ed.) 384. Other statutory means of transfer of title to real property include inheritance (RCW 11.04.050); devise (RCW 11.12.170); judicial sale; condemnation by various public bodies or pursuant to art. 1, § 16 of the state constitution; and adverse possession (RCW 7.28.010; RCW 7.28.050). The statutes set the guidelines.

[4]Passage of time, contrary to usual experience, seems to sharpen memories of what was said "over the back fence" about a boundary line.

sive annotations[5] and various law review articles[6] upon the subject to appreciate the lack of uniformity both in the law and in the guidelines applicable to the facts; and to realize that the doctrine of acquiescence, upon which the trial court finally based its decision, is a morass of uncertainty and confusion supporting one commentator's observation that

Vagueness of theory has led in turn to vagueness and disagreement on the facts which will merit judicial recognition. The result has been the growth of *a gnarled and hoary knot* upon this branch of the law of property. Browder, *The Practical Location of Boundaries,* 56 Mich. L. Rev. 487, 489 (1958). (Italics ours.)

It is important to keep in mind what this case does *not* involve. It does not involve adverse possession; it does not involve determination of a boundary line by parol agreement between adjoining landowners; it does not involve an estoppel in pais, for there is no evidence that defendant Myers acted to his detriment or injury by relying upon the mistake made by plaintiff's predecessor in interest when he placed the fence in its present position. Title to real property will not be disturbed by estoppel unless the evidence is clear and cogent. *Tyree v. Gosa,* 11 Wn.2d 572, 578, 119 P.2d 926 (1941).

This case involves only one question, so well defined in the oral opinion of the trial court: Is there evidence of "sufficient acquiescence in the fence line to constitute it as the true boundary line of the property"?

This question we must answer in the negative, for we find nothing in the record to support the trial court's ultimate conclusion to the contrary.

---

[5]Establishment of boundary line by oral agreement or acquiescence, 69 A.L.R. 1430-1533; Same subject, 113 A.L.R. 421; Fence as a factor in fixing location of boundary line, 170 A.L.R. 1144-1148.

[6]*Boundary Location by Agreement and by Acquiescence,* 12 Baylor L. Rev. 93 (1960); *Boundary by Acquiescence,* 3 Utah L. Rev. 504 (1953); *Acquiescence in Lieu of Adverse Possession in Boundary Line Cases,* 8 Okla. L. Rev. 486 (1955). Browder, *The Practical Location of Boundaries,* 56 Mich. L. Rev. 487 (1958); Ellis, *Boundary Disputes in Washington,* 23 Wash. L. Rev. 125, 131 (1948).

■ What is "acquiescence"? We found a definition in *Pence v. Langdon,* 99 U.S. 578, 581, 25 L. Ed. 420 (1878). Although the facts of the case are not apropos, the definition is:

> Acquiescence and waiver are always questions of fact. [They must, of course, be supported by evidence.] There can be neither without knowledge. The terms import this foundation for such action. One cannot waive or acquiesce in a wrong while ignorant that it has been committed. . . . There must be knowledge of facts which will enable the party to take effectual action.

The rationale of our decision in *Thomas v. Harlan,* 27 Wn.2d 512, 178 P.2d 965, 170 A.L.R. 1138 (1947) (to which is appended the annotation in 170 A.L.R. 1144), is dispositive of the issue of the instant case. In *Thomas,* defendant's predecessor built a fence 20 feet south of his true line. This gave plaintiff 20 feet more land. A fence existed for 14 years. The disputed land, however, was not occupied until 4 or 5 years before a survey was made. A judgment for plaintiff was reversed; the court said:

> It is a rule long since established that, if adjoining property owners *occupy* their respective holdings to a certain line for a long period of time, they are precluded from claiming that the line is not the true one, the theory being that the recognition and acquiescence affords a conclusive presumption that the used line is the true boundary. Most courts have laid down the rule that the time required to elapse before a line is established, is the time necessary to secure property by adverse possession. [Citations omitted.]
>
> *In the absence of an agreement to the effect that a fence between the properties shall be taken as a true boundary line, mere acquiescence in its existence is not sufficient to establish a claim of title to a disputed strip of ground. Dibirt v. Bopp,* 4 Cal. App. (2d) 541, 41 P. (2d) 174. In that case, it was held that one who had purchased a lot separated from the adjoining property by fence, and allowed the fence to stand for more than twenty-five years, at which time he discovered that his deed called for three additional feet of ground, was not estopped from claiming the additional land because of the fact that the evidence indicated a mere acquiescence in the exist-

ence of the fence, and failed to show a definite agreement to accept its location as the true boundary line.

In all cases, it is necessary that acquiescence must consist in recognition of the fence as a boundary line, and not mere acquiescence in the existence of a fence as a barrier. [Citations omitted.] (Italics ours.)

From the beginning of the italicized portion to the end, the above was quoted with approval in *Skov v. Mac-Kenzie-Richardson, Inc.,* 48 Wn.2d 710, 716, 296 P.2d 521 (1956).

Acquiescence in a property line cannot be a unilateral act. It must be bilateral. Both parties must agree or acquiesce, either expressly or by implication. *Skov v. Mac-Kenzie-Richardson, Inc., supra;* Annotations: 69 A.L.R. at 1506; 113 A.L.R. at 436.

There is no evidence in the record to support a conclusion that defendant Myers acquiesced to anything, either express or implied, except a weak self-serving statement.

The corrected decree of March 9, 1966, is reversed. The case is remanded, with directions to enter a decree that determines the south boundary of plaintiff's land in the S.W. 1/4 of section 3, township 27 north, range 6 E.W.M. to be the government-survey line which commences at the south quarter corner of said section 3 and extends south 81°54′44″ west to the southwest corner of said section 3. In addition, defendants Stoen shall account for the rock removed from the property of plaintiff and defendant Myers. The trial court may, if deemed necessary, take further testimony for this accounting.

Plaintiff (appellant) will recover costs on this appeal.

It is so ordered.

FINLEY, C. J., HAMILTON and HALE, JJ., and ARMSTRONG, J. Pro Tem., concur.