[Nos. 19810-0-II; 20055-4-II.    Division Two.    October 10, 1997.]

CAROL E. LILLY, *Appellant*, v. STEPHEN L. LYNCH, ET AL., *Respondents.*

*Heather Houston* of *Gibbs, Houston & Pauw*, for appellant.

*Kathleen E. Pierce* of *Bonneville, Viert, Morton & McGoldrick*, for respondents.

HUNT, J. — Carol E. Lilly appeals an adverse summary judgment, denial of her motion to reconsider, and exclusion of her expert witness's declaration. She sued to quiet title to a boat ramp adjoining her house, on alternative theories of adverse possession, estoppel, or mutual recognition and acquiescence. The trial court granted summary judgment in favor of Stephen Lynch, her neighbor and the true title owner.

We affirm summary judgment in favor of Lynch on the issue of estoppel only. Finding a genuine issue of material fact regarding Lilly's claims of adverse possession and

mutual recognition and acquiescence, we reverse the summary judgment and remand for trial on all issues except estoppel.

## FACTS

### A. Substantive

Carol Lilly and Stephen Lynch own neighboring properties on the waterfront in Gig Harbor, Washington. For at least 20 years before this lawsuit, successive owners of both properties believed that a boat ramp between the properties was part of the Lilly property. All parties believed the north wall of the cement ramp was the boundary line between the properties. See map below:

Owners of each property regularly used the ramp, with permission from the owners of the Lilly property. Unbeknownst to all, Lynch and his predecessors held legal title to the property on which the ramp was located.

From 1972 until 1985, Eric Lindgren owned the Lilly property, south of the boat ramp. He believed the north wall of the boat ramp was the boundary between the properties. During this time, Hardwick Smith owned the Lynch property, north of the boat ramp. Smith also believed the north wall was the boundary. Smith regularly used the boat ramp to launch his boat and occasionally helped Lindgren with maintenance. Occasionally, Smith would leave his boat on the ramp overnight, first asking for permission from Lindgren. When the bulkheads in front of the properties were repaired, Lindgren directed contractors to leave an opening on the ramp for launching boats.

The Bergers purchased the Lilly property from Lindgren in 1985. For several years they kept a boat on the ramp at all times, forcing Smith to launch around it. Smith did not complain directly to the Bergers, nor did he ask them to move the boat. In 1989, Smith sold his property to Lynch. Lynch occasionally used the ramp to launch his boat or to walk to the beach. Lynch, too, believed the ramp was part of the Lilly property.

Lilly purchased the property from the Bergers in 1990. Part of Lilly's septic system is under the boat ramp. Believing the boat ramp was hers, she extensively remodeled her home, building a wrap-around deck over a portion of the ramp. Believing that the boundary was actually north of the boat ramp's north wall, Lilly landscaped north of the wall in 1991. Lynch complained and stated in a letter to Lilly that the previous owners all believed the north boat ramp wall was the boundary. Lilly removed the landscaping and built a fence along the north side of the ramp, thus precluding all access from the Lynch property to the boat ramp.

A recent survey revealed that the actual boundary is just south of the boat ramp's south wall. Thus, Lynch is

the true titleholder to the ramp. The survey also revealed that a portion of Lilly's house, deck, and storage shed are on the Lynch property.

## B. Procedural

Shortly after the survey was completed, Lilly filed suit in Pierce County Superior Court, seeking to quiet title to the property south of the boat ramp's north wall. She asserted that she and her predecessors had adversely possessed the disputed parcel for more than 10 years.

Lynch answered and asked the court to dismiss Lilly's claim.[1] Lynch conceded that Lilly had adversely possessed the land upon which she had built part of her house, disputing only ownership of the ramp. In response to Lynch's motion to dismiss, Lilly raised the defenses of mutual recognition and acquiescence, estoppel, and parol agreement.[2]

Both parties moved for summary judgment. The trial court found that no genuine issue of material fact existed and granted summary judgment in favor of Lynch.[3] Lilly filed a motion for reconsideration, which the trial court denied.

## ANALYSIS

### A. Summary Judgment

When reviewing summary judgment, the appellate court engages in the same inquiry as the trial court and reviews the evidence de novo. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 12-13, 721

---

[1]Lynch also counterclaimed, seeking a prescriptive easement for use and maintenance of a water cistern and to a walkway behind Lilly's house. The counterclaims were later dismissed by agreement of the parties.

[2]Lilly did not raise the parol agreement issue on appeal.

[3]The trial court entered an order but reserved entry of the final judgment until a legal description was available from a surveyor. The trial court entered the final judgment on September 1, 1995.

P.2d 1 (1986). A summary judgment motion brought under CR 56 should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of genuine issues of material fact and the moving party's entitlement to judgment as a matter of law. *Wilson*, 98 Wn.2d at 437. The court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437. Summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson*, 98 Wn.2d at 437.

### B. Adverse Possession - Exclusivity

█ Lilly first claims the trial court should have quieted title to the boat ramp in her favor based on adverse possession. A possessor may gain title to property from the true owner by adverse possession if four conditions are met: "[T]he possession must be[ ] (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile and under a claim of right made in good faith." *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). These conditions must be met concurrently for at least 10 years. *Chaplin*, 100 Wn.2d at 857; RCW 4.16.020. Both parties agree that Lilly has demonstrated conditions (2), (3) and (4). The primary issue is whether Lilly can demonstrate condition (1), "exclusive" possession.[4]

### 1. Ten-Years/Tacking

█ █ Because Lilly owned the property for only two years before commencing this action, we look to the actions of not only Lilly and Lynch, but also their predecessors in interest. "Where there is privity between successive occupants holding continuously and adversely to the true title holder, the successive periods of occupation may be tacked to each other to compute the required 10-year

---

[4]The trial court found that Lilly did not create a genuine issue of material fact as to exclusive possession.

period of adverse holding." *Roy v. Cunningham*, 46 Wn. App. 409, 413, 731 P.2d 526 (1986).[5] Here, Lilly and the Bergers both purchased the property through a real estate contract. Accordingly, there is privity and Lilly may tack her period of ownership to Lindgren's and the Bergers' ownership.

### 2. True Owner Character of Use

■ A claimant's possession need not be *absolutely* exclusive in order to satisfy the exclusivity condition of adverse possession. *Crites v. Koch*, 49 Wn. App. 171, 174, 741 P.2d 1005 (1987). An "occasional, transitory use by the true owner usually will not prevent adverse possession if the uses the adverse possessor permits are such as a true owner would permit a third person to do as a 'neighborly accommodation.' " 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE—REAL ESTATE: PROPERTY LAW § 8.19 at 516 (1995). "Cases where the courts have found a lack of exclusivity involve use by the title owner that indicates ownership." *Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 217, 936 P.2d 1163, 1172 (1997).

■ "The ultimate test is the exercise of dominion over the land in a manner consistent with actions a true owner would take." *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 759, 774 P.2d 6 (1989). The primary questions here are (1) whether Smith's and Lynch's use of the boat ramp was more than "occasional" or "transitory," and (2) whether Lilly and her predecessors acted as true owners would.

Several cases discussing a true owner's use of disputed property are informative. *Frolund v. Frankland*, 71 Wn.2d 812, 431 P.2d 188 (1967), *overruled on other grounds by Chaplin*, 100 Wn.2d at 861 n.2, reiterated the rule that the necessary occupancy and use of property, for the purposes of establishing adverse possession, need only be of the character that a true owner would assert, consider-

---

[5](Citing RCW 4.16.020; *El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 856, 376 P.2d 528 (1962) (citing *Buchanan v. Cassell*, 53 Wn.2d 611, 335 P.2d 600 (1959))).

ing the nature and location of the land. *Frolund*, 71 Wn.2d at 817. In circumstances similar to this case, the Supreme Court held:

> [T]he evidence reveals that the children of the parties, as well as those of other neighbors, played about and over the various neighborhood beach areas with no more than the usual parental approval and restraint, and that the parties themselves occasionally, socially, and casually visited back and forth, and sometimes assisted one another in the performance of various work projects, e.g., beaching the swimming raft for winter storage. Such conduct, *under the circumstances,* denotes neighborliness and friendship. It does not amount to a subordination of defendants' adverse claim to the disputed wedge . . . .

*Frolund*, 71 Wn.2d at 818-19 (emphasis added).

In *Crites,* the true owners used the disputed property occasionally to park farming equipment and as a shortcut to another parcel of land. In contrast, the possessor regularly farmed and cultivated the disputed parcel for over 15 years. Division III of this court found that the possessor's "intensive" use "differed fundamentally in scope and substance" from the "slight" use made by the true owner. *Crites*, 49 Wn. App. at 175. The court found that the use permitted by the possessor was "a type of use permitted by the community as a neighborly courtesy" rather than a shared occupancy that would defeat exclusivity. *Crites*, 49 Wn. App. at 176.[6]

Here, Lilly provided evidence that she and her predecessors believed they owned the ramp and that any use by other parties was with their implied or express permission. A storage shed and part of Lilly's house have been for years situated on the strip of property north of the

---

[6]In contrast, the true owners in *ITT Rayonier* moored their houseboat near the disputed property for a period longer than did the possessor, and used the property jointly with the possessor. Although the possessor made some improvements, the Supreme Court found the possessor's "shared and occasional use of the property simply did not rise to the level of exclusive possession *indicative of a true owner* for the full statutory period." *ITT Rayonier*, 112 Wn.2d at 759-60 (emphasis added).

true boundary. Part of Lilly's septic system is under the boat ramp. Lilly and her predecessors maintained the ramp and a pipeline running down its north wall. They stored their boats on it for several years at a time and gave workers permission to use the ramp to store construction equipment and materials. Lilly extended her deck over part of the ramp, landscaped north of the north wall, removing the landscaping only at Lynch's insistence that the north wall was the property line. Lilly then erected a fence along the boat ramp's north wall.

Uncontroverted evidence shows that Smith also regularly used the ramp and occasionally helped with maintenance. But the parties presented conflicting testimony regarding the amount of maintenance Smith performed on the ramp: Smith said he did significant maintenance; Lindgren stated Smith helped occasionally. There was also conflicting evidence regarding where Smith stored his fishing boat: Smith stated he stored it at the top of the ramp, but his fishing buddy, Albert Finnigan, stated Smith stored it on his own property.

Although Smith regularly used the boat ramp, it is likely a true owner would have allowed a friendly neighbor to use the ramp regularly without asking permission each and every time. As in *Frolund*, it is possible that this was the kind of use commonly allowed in the area, "a neighborly accommodation" rather than "shared occupancy." Even assuming that Smith's use was more than "trifling," significant evidence establishes that Lilly and her predecessors exercised dominion and control over the property in a manner consistent with a true owner.

Viewing the evidence in the light most favorable to Lilly as the nonmoving party, reasonable minds could reach differing conclusions about the extent of Smith's use of the boat ramp as compared to Lindgren's and the Bergers'. Lilly's evidence creates a material issue of fact regarding the extent and nature of control exerted by Lilly and her predecessors and the amount and type of use by Smith.

Summary judgment for Lynch on this adverse possession issue was error.

## C. Mutual Recognition and Acquiescence

■ Similarly, we find that the trial court erred in dismissing Lilly's alternate claim of mutual recognition and acquiescence. In the settlement of boundaries, the mutual recognition and acquiescence doctrine supplements adverse possession. *Lloyd v. Montecucco*, 83 Wn. App. 846, 855, 924 P.2d 927 (1996) (citing STOEBUCK, § 8.21 at 519), *review denied*, 131 Wn.2d 1025, 937 P.2d 1101 (1997). In *Mullally v. Parks*, 29 Wn.2d 899, 906, 190 P.2d 107 (1948), the court noted:

> [T]his court has consistently held that where boundaries have been defined in good faith by the interested parties, and thereafter for a long period of time acquiesced in, acted upon, and improvements made with reference thereto, such boundaries will be considered the true dividing line and will govern, and whether the lines as so established are correct or not becomes immaterial.

*Mullally*, 29 Wn.2d at 906.

To establish the doctrine of mutual recognition and acquiescence, the following elements must be shown:

> (1) The line must be certain, well defined, and in some fashion physically designated upon the ground, *e.g.*, by monuments, roadways, fence lines, etc.; (2) in the absence of an express agreement establishing the designated line as the boundary line, the adjoining landowners, or their predecessors in interest, must have in good faith manifested, by their acts, occupancy, and improvements with respect to their respective properties, a mutual recognition and acceptance of the designated line as the true boundary line; and (3) the requisite mutual recognition and acquiescence in the line must have continued for that period of time required to secure property by adverse possession.

*Lamm v. McTighe*, 72 Wn.2d 587, 593, 434 P.2d 565 (1967). The burden of proof is on the plaintiff to show, by clear,

cogent and convincing evidence, that both parties acquiesced in the line for the period required to establish adverse possession — 10 years. *Muench v. Oxley*, 90 Wn.2d 637, 641, 584 P.2d 939 (1978), *overruled on other grounds by Chaplin*, 100 Wn.2d at 861 n.2.

Here, Lilly has demonstrated facts sufficient to meet these three criteria as follows:

## 1. Well-defined Line

The wall along the boat ramp's north side is "well defined." It extends beyond the ramp, up to the walkway that abuts the Lilly property.

## 2. Mutual Recognition and Acceptance

Next, the parties must agree or acquiesce in the boundary, either expressly or by implication. *Houplin v. Stoen*, 72 Wn.2d 131, 137, 431 P.2d 998 (1967). Because there is no evidence of an express agreement that the north wall was the boundary, we look to the actions of the parties. *Lamm*, 72 Wn.2d at 593. The purported boundary must be recognized by the parties as a true boundary and not just a barrier. *Heriot v Smith*, 35 Wn. App. 496, 501, 668 P 2d 589 (1983).

Again, the evidence raises a material issue of fact concerning whether the north wall was viewed as a boundary or as a barrier, and whether the parties' actions evince an agreement that the north wall is the boundary line.

Evidence shows Smith regularly mowed his lawn up to the north wall, but not beyond. It also shows he may have stored his boat on his property to the north. These actions indicate a belief and acceptance of the wall as a boundary. Further, when Smith used the ramp, he did so with the belief that it belonged to Lindgren. When Smith wanted to store his boat overnight on the ramp, he would ask and receive permission from Lindgren. There is no evidence that Smith or Lynch ever asserted a possessory or owner-

ship interest in the ramp or questioned its ownership by Lilly and her predecessors.

Additionally, when Lilly landscaped north of the wall, Lynch asked her to remove it, asserting that his predecessors believed the north wall of the ramp was the boundary. Lilly removed the landscaping and built a fence along the north wall. This further supports Lilly's claim that the parties accepted the wall as a boundary.

### 3. Time

As explained in the Adverse Possession portion of this opinion, Lilly has made a prima facie showing that for a period of at least 10 years, the parties and their predecessors treated the north wall as a boundary line between the Lilly and Lynch properties. The evidence creates an issue of fact that should be presented to a jury. Accordingly, we reverse and remand on the issue of mutual recognition and acquiescence.

### D. Estoppel

"Estoppel in pais" is yet another method by which boundaries between adjoining parties may be established. *Lamm*, 72 Wn.2d at 591. Alteration of record titles to land by estoppel requires three elements: "(1) [a]n admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act." *Burkey v. Baker*, 6 Wn. App. 243, 248, 492 P.2d 563 (1971) (citing *Arnold v. Melani*, 75 Wn.2d 143, 147, 449 P.2d 800 (1968); *Thomas v. Harlan*, 27 Wn.2d 512, 178 P.2d 965, 170 A.L.R. 1138 (1947)). Here the burden is on Lilly to establish the elements of estoppel by "clear and convincing" evidence. *Thomas*, 27 Wn.2d at 518.

### 1. Detrimental Reliance

Absent fraud or misrepresentation, only those who have

"*reasonably relied* upon such acts or representations may raise an estoppel." *Burkey*, 6 Wn. App. at 248 (citing *Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 461 P.2d 538 (1969)). The party charged with estoppel must be the one who made the statement upon which the plaintiff was alleged to have relied. *Roy*, 46 Wn. App. at 415. Because Lynch is the only other party to this action, Lilly must show she relied on a statement he made.

Lilly claims she relied to her detriment on a letter Lynch sent to her when they were disputing the location of her landscaping in 1991. In the letter, Lynch stated he "collected written statements from Hardwick Smith and the 3 previous owners of your property. They all agree that the edge of the boat ramp represents the property line."

Lilly did not provide clear and convincing evidence that she relied on Lynch's letter when she built her fence. She admitted that the people from whom she purchased the land told her that the north wall was the boundary. When she remodeled her home in 1990, she built the house and deck up to the line of the north wall of the ramp. Further, Lynch's letter merely recited what he had been told by other owners, not his personal knowledge or belief.

## 2. Misleading Representation

"[T]he party claiming estoppel must have been misled by the representation made." *Burkey*, 6 Wn. App. at 248 (citing *Adel v. Blattman*, 57 Wn.2d 337, 357 P.2d 159 (1960)). Lilly has not shown that she was misled by Lynch's letter, especially when she had purchased the property believing the north wall was the boundary. Lilly has not met her burden of proof; the trial court correctly granted summary judgment in favor of Lynch on the issue of estoppel.

### E. Expert testimony

In a motion for summary judgment, affidavits must

be based on the personal knowledge of the affiants. CR 56(e); *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 782 P.2d 1045 (1989). An expert's affidavit submitted in opposition to a motion for summary judgment must be factually based and must affirmatively show that the affiant is competent to testify to the matters stated therein. *McKee*, 113 Wn.2d at 706. The opinion of an expert that is only a conclusion or that is based on assumptions does not satisfy the summary judgment standard. *Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 787, 819 P.2d 370 (1991).

The trial court struck the following part of a declaration made by Lilly's expert, Marc Wagner:

> At the time of the meeting, it was apparent that both [parties] had considered the north wall of the concrete boat ramp to be the boundary line between their two properties. Given the location of the structures on the Lilly property and the Lynch property, and from the angle of the concrete boat ramp respective to the two properties, I considered the boat ramp to be an attribute of the Lilly property.

Wagner does not state how he came to his conclusion in the first sentence, and upon what facts it was based. Nor does Wagner state how he is qualified to make the determination recited in the second sentence. His affidavit states that he is "Director of Surveys working for ACE Inc." He does not explain how he is qualified to determine whether a structure is an attribute of certain property. The trial court did not abuse its discretion when it struck these two sentences.

Our reversal of summary judgment and remand for trial render this issue moot.

### F. Motion for Reconsideration

██ ██ Lilly moved for reconsideration of the trial court's order dismissing her action to quiet title; she submitted new supplemental declarations in support of the motion. She argues that the trial court should have considered her additional evidence, but she offers no cita-

tions to authority explaining why the trial court erred. Assignments of error that are not supported by citations to authority will not be reviewed on appeal. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Moreover, the grant or denial of a motion for reconsideration is within the sound discretion of the trial court and will be overturned only upon an abuse of discretion. *Bringle v. Lloyd*, 13 Wn. App. 844, 848, 537 P.2d 1060 (1975).

In light of our reversal of summary judgment on adverse possession, mutual recognition and acquiescence grounds, this issue is moot. As to the estoppel issue, Lilly has failed to demonstrate that the trial court erred in denying her motion for reconsideration.

## CONCLUSION

Lilly did not present facts sufficient to resist summary judgment on the theory of estoppel. On the theories of adverse possession and mutual recognition and acquiescence, however, Lilly presented evidence creating a material issue of fact sufficient to defeat Lynch's motion for summary judgment. Accordingly, we reverse the summary judgment, and remand for trial to allow Lilly to establish ownership under the doctrines of either adverse possession or mutual recognition and acquiescence.

SEINFELD and ARMSTRONG, JJ., concur.