# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AMY C. GARLING, a single person, | ) | No. 74707-0-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| MARK N. MULDAUR and DIANE A. SUTHERLAND, husband and wife, and all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the complaint herein, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) | FILED: May 22, 2017 |

APPELWICK, J. — Garling sued her neighbors, Muldaur and Sutherland, for quiet title to a strip of land between their lots. The trial court quieted title in favor of Muldaur and Sutherland on the basis of both adverse possession and mutual recognition and acquiescence. It also quieted title to a penumbra of ground around the boundary line as was necessary for the continued use of the property. We affirm.

2017 MAY 22 AM 9:39

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

FACTS

This case involves a boundary dispute between Amy Garling and her neighbors, Mark Muldaur and Diane Sutherland, a married couple. Muldaur and Sutherland's property (Lot 6) lies directly south of Garling's property (Lot 7).

The lots share a driveway. A seam runs down the concrete driveway. This seam does not evenly divide the driveway. It is closer to Garling's property than it is to Muldaur and Sutherland's.

When Muldaur and Sutherland moved into their home in 1993, there was a chain link fence on the property. This chain link fence runs north to south. It ends with a fence post on what Muldaur and Sutherland believed was the northeast corner of their property. In this corner, there was also a concrete pad. Shortly after Muldaur and Sutherland moved into their home, they constructed a shed in this corner, on top of the concrete pad.

Between 1987 and 1999, Mark Huston owned Lot 7. Between 1999 and 2007, Lance King owned it. At some time no later than 2003, King built a wooden fence on Lot 7. The wooden fence runs parallel to the concrete pad, beginning directly north of the chain link fence post. King built the fence to protect against people coming into his yard from the alley as well as to keep his young child from going into the front yard.

After Garling purchased Lot 7, she had the property surveyed. The survey revealed that the actual boundary line between the lots was south of the wooden fence on Lot 7 and the concrete driveway seam. Thus, a 114 square foot section

of property along the platted property line was disputed. The shaded area in the diagram below represents the disputed area.



Garling sued for quiet title to the disputed area. Muldaur and Sutherland counterclaimed for quiet title on the basis of adverse possession or, alternatively, mutual acquiescence and recognition.

After a bench trial, the court entered findings of fact and conclusions of law. The court quieted title in the disputed area in Muldaur and Sutherland. It also quieted title in an area around the concrete seam reasonably necessary to continue parking along the concrete seam.

Garling appeals.[1]

---

[1] Garling has moved to expand the appellate record or for this court to take judicial notice of additional facts. She seeks to introduce evidence of Muldaur and Sutherland's conduct after the judgment was entered. We will not take judicial notice or supplement the record here. The parties' postjudgment conduct does not affect the question before us: whether the trial court erred in quieting title in favor of Muldaur and Sutherland. Our analysis is confined to the facts before the trial court. The motion is denied.

DISCUSSION

Garling argues that the trial court erred in quieting title in favor of Muldaur and Sutherland. She contends that Muldaur and Sutherland failed to establish the elements of adverse possession or mutual recognition and acquiescence. And, she alleges that the trial court erred in quieting title to a penumbra of ground surrounding the driveway seam such as is necessary for parking. Both parties argue that they are entitled to attorney fees on appeal.

We review the trial court's findings of fact for substantial evidence. Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). Substantial evidence is that which would persuade a fair-minded, rational person of the declared premise. Id. A reviewing court will not disturb findings of fact that are supported by substantial evidence, even if there is conflicting evidence. Id. Unchallenged findings are verities on appeal. Id. We may affirm on any basis supported by the evidence. Ladenburg v. Campbell, 56 Wn. App 701, 703, 784 P.2d 1306 (1990).

A party claiming title by mutual recognition and acquiescence must prove the elements by clear, cogent, and convincing evidence. Merriman, 168 Wn.2d at 630. Where the burden of proof is by clear, cogent, and convincing evidence, appellate courts test for substantial evidence by asking whether the evidence makes each element of the claim highly probable. In re Marriage of Schweitzer, 132 Wn.2d 318, 329, 937 P.2d 1062 (1997).

4

I.    Mutual Recognition and Acquiescence

Garling contends that the trial court erred in quieting title in favor of Muldaur and Sutherland on the basis of mutual recognition and acquiescence.[2]  She asserts that the evidence does not establish a certain, well-defined boundary line between the parties.  And, she argues that the trial court erroneously determined that Garling and/or her predecessors in interest recognized and accepted the purported boundary line.

A boundary between properties that is at odds with the true boundary line may be established through a number of doctrines.  Lamm v. McTighe, 72 Wn.2d 587, 591, 434 P.2d 565 (1967).  One of these doctrines is the mutual recognition and acquiescence doctrine.  Id.  Under this doctrine, a boundary consistently treated as the boundary by the interested parties will be considered the true dividing line.  Lilly v. Lynch, 88 Wn. App. 306, 316, 945 P.2d 727 (1997).  Three elements must be met to establish a boundary line by recognition and acquiescence:

> (1) The line must be certain, well-defined, and in some fashion physically designated upon the ground, e.g., by monuments, roadways, fence lines, etc.; (2) in the absence of an express agreement establishing the designated line as the boundary line, the adjoining landowners, or their predecessors in interest, must have in good faith manifested, by their acts, occupancy, and improvements with respect to their respective properties, a mutual recognition and acceptance of the designated line as the true boundary line; and (3)

_____

[2] Garling asserts that the trial court's findings of fact are not specific enough to permit review of this issue.  CR 52(a)(1) requires a court to enter findings of fact and conclusions of law after a bench trial.  Here, the trial court entered a number of findings on this issue before concluding that the owners of Lot 6 and Lot 7 had mutually acquiesced in the boundary line.  These findings are sufficient to permit review.

the requisite mutual recognition and acquiescence in the line must have continued for that period of time required to secure property by adverse possession.

Lamm, 72 Wn.2d at 592-93. The requisite time period is 10 years. Merriman, 168 Wn.2d at 630.

### A.    Certain Line

Garling contends that the first element, a certain, well-defined line, is not satisfied here. She argues that the driveway seam, edge of the concrete pad, chain link fence post, and wooden fence do not establish a certain, well-defined line. She alleges that these objects were not intended to reflect the actual boundary line and are instead simply a random collection of objects.

The trial court found that "[t]he edge of the [concrete] pad is aligned with the chain link fence post and runs east to west, where it eventually terminates and a concrete driveway seam begins." Garling does not challenge this finding. These facts show that the concrete pad, fence post, and driveway seam physically establish a visible common line. We conclude that this element is satisfied.

### B.    Mutual Recognition

Garling also challenges the second element of mutual recognition and acquiescence. This element requires the parties to agree or acquiesce in the boundary, either expressly or by implication. Lilly, 88 Wn. App. at 317. Where there is no evidence of an express agreement concerning a designated boundary, the court will look to the actions of the parties. Id. The parties must recognize the purported boundary as a true boundary, rather than merely a barrier. Id.

Garling challenges the findings of fact concerning the parties' mutual recognition of the purported boundary line. Specifically, she asserts that findings of fact 6, 8, 9, 12, and part of 13 are not supported by clear and convincing evidence. In finding of fact 6, the court found that the chain link fence running behind Muldaur and Sutherland's home ends with a metal fence post. The court found that this fence post was located "on what was commonly believed to be the northeast corner of the Defendant's property (Lot 6)." Finding of fact 8 elaborates on this:

> Since at least 1993, Mr. Muldaur and Ms. Sutherland and their neighbors to the north (Plaintiff Garling's predecessors in interest) have treated the chain link fence post, the northern edge of the concrete pad, and the driveway seam as the boundary marker for the division of the properties. This boundary has been further recognized by the manner in which the Defendants, the Plaintiff, and the Plaintiff's predecessors in interest have used their respective properties.

And, finding of fact 9 sets out that Huston believed that the chain link fence post and the driveway seam represented the boundaries between Lot 6 and 7, and treated them as such. Finding of fact 12 summarizes this ongoing relationship: "Since at least 1988, the owners of Lot 6 and the owners of Lot 7 have treated the seam in the driveway pad, the concrete pad under the Muldaur/Sutherland shed, and the metal fence post as establishing the property line between the two parcels."

Muldaur testified that when he and Sutherland moved into their home in 1993, he assumed the chain link fence post marked the corner of their property. Sutherland testified that while she has always used the driveway for parking, she

7

has tried to stay on the south side of the concrete seam, because that was her understanding of the boundary line.

Huston, who lived on Lot 7 from 1987 to 1999, testified that he never knew the exact location of the platted boundary line between the two properties. But, during cross-examination, Huston admitted that he always assumed that the metal post marked the corner boundary between the lots. And, he revealed that he always assumed the concrete seam was the boundary line. Huston confirmed that it never occurred to him that the boundary line might be straight down the middle of the driveway. He acted accordingly by never storing anything on the south side of the driveway seam or parking on the south side of the driveway seam, except in unusual circumstances.

King, who purchased Lot 7 from Huston in 1999, also testified that he never knew exactly where the property line was. But, he stated that he assumed the boundary line was somewhere in the middle of the driveway. King testified about the wooden fence that he built on Lot 7. He noted that he did not attempt to determine the exact location of the boundary line before building the fence. He said that his purpose in building the fence was to make sure their dog and toddler would not easily get to the front yard, and to prevent people from cutting through the alleyway and using their driveway. He did not intend for the wooden fence to designate the boundary between the two properties.

But, defense counsel confronted King with his earlier deposition testimony. In King's deposition, counsel asked, "But. . . you believed [Muldaur and Sutherland's] fence post was on their property and you were building right next to

it, correct?" To this, King responded, "Correct." At trial, when confronted with this earlier statement, King stated that while he believed the fence post belonged to Muldaur and Sutherland, he did not assume that it was on their property. When pressed on this issue, King admitted that he thought the metal fence post was approximately the boundary line.

The testimony as a whole provides clear, cogent, and convincing evidence supporting the challenged findings. We conclude the second element is met.

Muldaur and Sutherland shared the boundary line with Huston and then King for longer than the required 10 years. We conclude that the third element is met.

We conclude that the trial court did not err in quieting title in favor of Muldaur and Sutherland on the basis of mutual recognition and acquiescence. This basis alone supports the judgment. Therefore, we need not address whether the trial court erred in quieting title on the basis of adverse possession.[3]

II.    Penumbra of Ground

Garling contends that the trial court erred in quieting title to an area around the concrete seam as necessary to provide for ingress and egress when parking in the driveway.[4]  She asserts that no Washington case provides authority for

---

[3] Adverse possession provides a basis for the award of attorney fees. See RCW 7.28.083(3). The trial court did not award attorney fees below. Because we would not be inclined to award them on appeal, the issue of fees does not provide a reason to reach this issue.

[4] Garling argues that the fact that the trial court raised this issue on its own at the end of closing arguments constitutes an abuse of discretion, regardless of the merits of this issue. However, the court permitted the parties to submit additional briefing on this question. Both parties did so. We conclude that the trial court did not abuse its discretion by raising this issue.

9

quieting title to a penumbra of ground as was done here. And, Garling contends that the trial court's language is so vague that it fails to inform her of the burdens imposed on her property.

This court has previously recognized that trial courts may create a penumbra of ground around a property line when necessary to resolve a boundary dispute. See, e.g., Lloyd v. Montecucco, 83 Wn. App. 846, 853-54, 924 P.2d 927 (1996). In Lloyd, the Lloyds challenged the new boundary line set by the trial court. Id. at 853. They argued that the Montecuccos' actual possession of the area was a jagged line, so the trial court erred in setting a straight boundary line. Id. The Court of Appeals upheld this demarcation. Id. It noted, "Courts may create a penumbra of ground around areas actually possessed when reasonably necessary to carry out the objective of settling boundary disputes." Id. at 853-54. Thus, a trial court may project a line between objects when reasonable and logical to do so, depending on the character and use of the land. Id. at 854. As a result, this court held that the trial court did not err in drawing the boundary as a straight line. See id. at 854.

We applied similar principles in Shelton v. Strickland, 106 Wn. App. 45, 21 P.3d 1179 (2001). There, the trial court quieted title to a strip of property on the basis of adverse possession. Id. at 49. And, it also granted an easement of two feet around the structure built on the land that had been adversely possessed, for maintenance purposes. Id. This court recognized, "On urban property, the placement of structures on another's land, or encroaching partially on another's

land, amounts to possession not only of the land covered by the structure but of a reasonable amount of the surrounding territory." Id. at 51.

Here, a penumbra of ground around the concrete seam is also necessary to the resolution of the boundary dispute. The driveway between Lot 6 and Lot 7 is too narrow for two cars to park side by side. Muldaur and Sutherland generally park along the seam on the south side. But, given the narrow width of the driveway, Muldaur and Sutherland may need to open their car doors over the concrete seam or briefly step on Garling's property while entering or exiting their vehicles. A penumbra surrounding the seam is reasonably necessary for Muldaur and Sutherland to continue parking along the seam. Without such a penumbra, a fence could be placed along the property line to obstruct the historic use of the driveway. Thus, the trial court did not err in quieting title to a penumbra of land that is reasonably necessary to continue the historic parking use of the driveway.

We affirm.

WE CONCUR:

11