IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBERT BEIDLER,<br><br>               Appellant,<br><br>        v.<br><br>SNOHOMISH COUNTY,<br><br>               Respondent. | No. 84316-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Robert Beidler appeals from an order granting summary judgment in favor of Snohomish County that resulted in the dismissal of his claims under the Public Records Act.[1] Because Beidler fails to demonstrate a genuine issue of material fact as to whether Snohomish County's response to his request was reasonably diligent, and the record establishes it did not constructively deny his request, dismissal was proper.

## FACTS

Robert Beidler works as an independent consultant on the subject of traffic safety. In 2015, while he was the undersheriff of Snohomish County (the County), he began developing a traffic safety program that was ultimately implemented at

---

[1] Ch. 42.56 RCW.

the Snohomish County Sheriff's Office (SCSO). In 2020, after retiring from a lengthy career in law enforcement, Beidler planned a business based on conducting traffic safety presentations around the country.

In an effort to gather accurate data for this business venture, Beidler submitted a public document request (PDR) to Snohomish County on March 12, 2021 under the Public Records Act (PRA), seeking the following:

> Sheriffs [sic] Office- All driving review board pursuit and collision summaries for 2020. All commander summaries for pursuits and collisions in 2020. All collision reports for 2020 where a sheriffs office [sic] vehicle was involved. It should include ramming, pinning, pitting, work damage, and any other report or summary called a collision. Number of injuries to sheriffs office [sic] personnel as a result of vehicle collisions and pursuits. Number of injuries to citizens as a result of sheriffs office [sic] collisions or pursuits.
>
> County- All litigation and potential litigation as a result of sheriffs office [sic] collisions or pursuits in 2020. It should include dollar amount of that litigation or potential litigation.
>
> County- Total dollar amount of damage to sheriffs office [sic] vehicles in 2020 as a result of collisions or pursuits. That should include parts, labor, outside vendor work, any any addition [sic] shop costs. The county has a cost for each mile driven by sheriffs office [sic] vehicle by vehicle type. What was that per mile cost for 2019, 2020, 2021.

The County received the request that day and assigned it a tracking number. The request primarily sought records relating to the SCSO Driving Review Board (DRB); the DRB is tasked with conducting internal collision and driving reviews that focus on reducing collisions involving SCSO vehicles and the risk of recurrence. However, Beidler's PDR also included litigation and maintenance records from other departments, as well as records related to collisions and injuries.

The request was assigned to Jessica Payne, the supervisor of the SCSO Public Disclosure Unit (PDU), which is the unit predominantly responsible for

gathering and processing requests for records from the SCSO. The PDU has seven full-time employees: one supervisor, five public information and records specialists (PIRS), and one administrative law enforcement technician. Payne was familiar with the DRB and knew that the production of one year's worth of DRB records and reports would be "voluminous and require time-consuming review." Accordingly, the request was categorized as "intermediate"[2] and Payne believed "the best way to produce the records would be on an installment basis."

On March 15, 2021, Payne received all of the potentially responsive records sought in Beidler's request from the various County departments. The records were in digital format and included the following: 6,306 PDF/Microsoft Word pages (digital document format); 74 combined WAV files (audio file format), MP4 files and MPEG files (multimedia file formats); 6 emails; 1 PowerPoint (slideshow program) file; 2 HTML files (web page format); and 147 PNG/JPEG files (image file formats). Each of the records identified as potentially responsive needed to be reviewed to determine if it was truly responsive to Beidler's request, then whether it was subject to a PRA exemption and therefore should not be produced at all, and finally, if it was not exempt, whether any redactions would be required prior to production. Payne "estimated that [she] would initially be able to devote 1-2 hours to this request," and produce the first installment by May 4, 2021.

On March 19, 2021, the County sent written acknowledgment of Beidler's request, as required by statute, and advised him that the first installment of records would be available by May 4. Payne's estimated production date was "based on

---

[2] The PDU categorizes requests as "standard," "intermediate," or "complex."

the number of responsive records provided for [her] review, the level of review necessary and need to apply redactions, the number of other pending requests, staffing levels, [her] other job duties, and the need to coordinate with other departments producing records." Additionally, the COVID-19 pandemic had caused the process of coordinating between County departments to become "more onerous and more time consuming because of limited in person work and face to face interaction."

The most time-consuming aspect of processing the request consisted of locating and redacting the exempt information. To do this, Payne was required to "review each page individually to determine whether any information within it is exempt." As many of the requested documents were police reports that contained personal and otherwise exempt information that "cannot be reliably located using computer software," Payne manually reviewed each document, reading the entire report to ensure all exempt information was properly redacted. After Payne located the information to redact, she used computer software to manually select the redacted portion and then applied an exemption code to that redaction. Payne necessarily used this process for every redaction applied to each responsive document.

Payne devoted "between 1-6 hours each month" to Beidler's request. From May 4 to December 8, 2021, the County provided seven installments to Beidler, comprising 824 out of the total 6,306 pages of potentially responsive documents and additional potentially responsive files in other formats (audio, HMTL, etc.). On December 21, 2021, Beidler sent a demand letter to the County seeking all the

remaining records as well as attorney fees and costs, claiming the County had failed to timely fulfill his request.[3] As Payne was also responsible for managing potential County liability stemming from its responses to PRA requests, she devoted additional time to Beidler's request after receiving the demand letter even though she believed the County's response had been timely from the date of its receipt. Between January 13 and June 10, 2022, the County provided seven more installments to Beidler, comprising 3,564 pages, along with audio and video files and emails. As of June 10, 2022, the County had provided 14 installments to Beidler, totaling 4,388 pages.[4]

On March 9, 2022, Beidler filed suit against the County, claiming it had unreasonably delayed production and wrongfully withheld the records. A declaration from Beidler, dated March 8, 2022, was filed with the complaint, along with copies of his original PDR and a later inquiry he sent through the County's public records portal seeking a status update on his request. In the complaint, Beidler sought penalties, costs, and attorney fees under the PRA. On May 31, 2022, the County filed a motion for summary judgment for dismissal of Beidler's claims.

Beidler opposed the motion and provided a number of documents demonstrating the completion of his PDR as to all requested files other than the DRB records. He also provided an updated declaration, dated June 15, 2022, and

---

[3] Beidler's initial demand letter claimed that the County's failure to comply with the PRA entitled him to $198,100,000 in penalties, but indicated that he would consider settlement for $283,000 plus attorney fees and costs.

[4] In briefing, the County asserts that, while the 14th installment is the most recent included in the record, it has continued to produce records to Beidler. Resp't's Br. at 25 n.4.

accompanying exhibits that included the original PDR, the follow up inquiry he sent through the County records portal, and SCSO documents purporting to demonstrate that the records he sought required minimal redaction. The trial court granted the County's motion and dismissed Beidler's claim, finding that the County had not denied Beidler an opportunity to inspect or copy a requested record and "has produced, and is continuing to produce" records pursuant to Beidler's request in a timely and appropriate manner and in accordance with the PRA. Beidler timely appealed.

ANALYSIS

Beidler avers the trial court erred in granting summary judgment because there is a genuine issue of material fact regarding whether the County acted with reasonable diligence in providing the DRB records he requested and whether that conduct ultimately resulted in wrongful withholding. We disagree.

I. Summary Judgment and the PRA

Judicial review of agency actions under the PRA is de novo. RCW 42.56.550(3). Where, as here, the record includes only documentary evidence, this court conducts the same inquiry as the trial court. Spokane Police Guild v. Liquor Control Bd., 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989). PRA claims may be decided on summary judgment. West v. Dep't of Licensing, 182 Wn. App. 500, 505, 331 P.3d 72 (2014). Summary judgment is proper when the record shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one upon which the

outcome of litigation, in whole or in part, depends. Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990). The facts are viewed in the "light most favorable to the nonmoving party, and summary judgment is granted only if, from all of the evidence, reasonable persons could reach but one conclusion." Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citations omitted).

On a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of material fact. Id. at 26. Once the moving party meets this burden, the inquiry shifts to the nonmoving party who must then present evidence demonstrating the existence of a disputed material fact. Atherton Condo., 115 Wn.2d at 516; see also Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The nonmoving party cannot rely on speculation, conclusory statements, or argumentative assertions but, rather, must provide "specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact." White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997); see also Elcon Const., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 169, 273 P.3d 965 (2012). "If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case," then the motion for summary judgment shall be granted. Atherton Condo., 115 Wn.2d at 516.

Affidavits submitted in opposition to summary judgment must be based on personal knowledge, provide admissible evidentiary facts, and affirmatively show that the affiant is competent to testify to the matters addressed therein. CR 56(e).

While "expert opinion alone may sometimes create issues of material fact to prevent summary judgment," the rules of evidence establish that such an opinion can only come from a witness who qualifies as an expert, a determination within the discretion of the trial court. Charlton v. Day Island Marina, Inc., 46 Wn. App. 784, 788, 732 P.2d 1008 (1987); L.M. v. Hamilton, 193 Wn.2d 113, 134, 436 P.3d 803 (2019). Even the opinion of a qualified expert is insufficient to survive a motion for summary judgment when it is merely a conclusion or rooted in assumptions. Lilly v. Lynch, 88 Wn. App. 306, 320, 945 P.2d 727 (1997). "Where there is no basis for the expert opinion other than theoretical speculation, the expert testimony should be excluded." Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha, 126 Wn.2d 50, 103, 882 P.2d 703, 891 P.2d 718 (1994).

"The PRA is 'a strongly worded mandate for broad disclosure of public records.'" Bainbridge Island Police Guild v. City of Puyallup, 172 Wn.2d 398, 408, 259 P.3d 190 (2011) (quoting Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). To ensure the full accessibility of public records, the PRA is to be "liberally construed and its exemptions narrowly construed." RCW 42.56.030. Unless a specific exception applies, agencies have "'an affirmative obligation to disclose records requested under the PRA.'" Freedom Found. v. Dep't of Soc. & Health Servs., 9 Wn. App. 2d 654, 663, 445 P.3d 971 (2019) (quoting SEIU 775 v. Dep't of Soc. & Health Servs., 198 Wn. App. 745, 749, 396 P.3d 369 (2017)). "There is a strong presumption in favor of full disclosure." Cantu v. Yakima Sch. Dist. No. 7, 23 Wn. App. 2d 57, 78, 514 P.3d 661 (2022).

Agencies must disclose the public records in a timely fashion. West, 182 Wn. App. at 511. RCW 42.56.100 requires the agencies to provide the "fullest assistance" and "most timely possible action on requests for information." Freedom Found., 9 Wn. App. 2d at 673. To determine whether an agency has acted promptly in producing responsive records, the court examines "whether the agency's response was thorough and diligent." Id. This is a fact-specific inquiry. Id.

Within five business days of receiving a request, the agency must respond by either: (1) providing the record; (2) providing an internet address and link to the records requested; (3) acknowledging receipt of the request and providing a reasonable estimate of time required to respond; (4) acknowledging receipt of the request, seeking clarification of the request, and providing a reasonable estimate of time required to respond; or (5) denying the request. RCW 42.56.520(1)(a)-(e). The PRA allows agencies additional time to respond when needed to "locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt." RCW 42.56.520(2). Agencies may make records available on an installment basis and are "not required to include an estimate of when [they] will fully respond to the request in [their] initial response." RCW 42.56.080(2); Health Pros Nw., Inc. v. Dep't of Corr., 10 Wn. App. 2d 605, 622, 449 P.3d 303 (2019). To determine the reasonableness of the agency's response, all estimates may be considered, "not just the estimate for the initial installment." Id. at 621.

A party may bring a cause of action under the PRA in two situations: "(1) when an agency wrongfully denies an opportunity to inspect or copy a public record, or (2) when an agency has not made a reasonable estimate of the time required to respond to the request." Andrews v. Wash. State Patrol, 183 Wn. App. 644, 651, 334 P.3d 94 (2014) (citing RCW 42.56.550(1), (2)). The agency bears the burden of proof to show its actions were in accordance with the PRA. RCW 42.56.550(1), (2).

The County responded to Beidler's request within five business days as required by RCW 42.56.520(1). The request was received on March 15, 2021, the County responded on March 19, 2021, and the first installment was made available on May 4, 2021. Considering the size of the request and the complexity of the review process involved, the County's decision to provide Beidler's request on an installment basis was not unreasonable.[5] Beidler sought a year's worth of County records that were held by four separate departments, including what amounted to 6,306 PDF/Microsoft Word pages, 74 combined WAV, MP4 and MPEG files, 6 emails, 1 PowerPoint file, 2 HTML files, and 147 PNG/JPEG files. As Payne explained, this "was a broad request" and the "production of a year's worth of DRB records and collision reports would be voluminous and require time-consuming review."

---

[5] As a foundational matter, the June 2, 2021 inquiry Beidler made through the County portal appears to demonstrate his misunderstanding concerning the nature of the County's response (that the request would be provided in installments) as Beidler expressly states, "Can I have an update please? We are a month past your estimated completion date." (Emphasis added.) Based on the timing of this inquiry, we assume the "completion date" to which he refers is the first installment date of May 4, 2021.

A.      Beidler's Wrongful Denial Claim Under the PRA

In briefing, Beidler relies heavily on Cantu to argue that the County failed to act with reasonable diligence, resulting in a constructive denial of his request. 23 Wn. App. 2d 57. In that case, Division Three of this court considered whether a school district's delay in producing records amounted to a constructive denial of Cantu's request. Id. at 93. On April 5, 2018, Cantu submitted two records requests to the district; the request at issue in the appeal was for all emails and text messages regarding her daughter over a two-year period. Id. at 87. On May 3, well beyond the PRA's five-day response requirement, the district emailed Cantu a letter providing an estimated production date of July 16, 2018. Id. at 71-72. On June 8, the district informed Cantu that it was suspending the outstanding response estimates and postponing the production of her request "due to the large scope of responsive records." Id. at 72. "Not only did the [d]istrict miss its estimated compliance date of July 16, but it provided no communication between July 9 and August 23, despite inquiry from Ms. Cantu." Id. at 94. When the district did respond, "it provided false information" that the records office had been closed for the summer. Id. On September 13, the district emailed Cantu "a web link to an empty Google directory." Id. at 88. At this point, the district had not provided any records in five months, responded to Cantu's emails, or given an estimated date of production. Id. at 94. Two weeks later, Cantu filed a complaint, asserting the district had effectively denied her April 5 request. Id. at 88. The district argued that Cantu's claim was not ripe because the district had not taken affirmative action denying it, but the court disagreed. Id. at 89.

The court applied "an objective standard from the viewpoint of the requester" to determine whether the district had diligently worked on the request. Id. at 94. Considering the totality of circumstances, the court concluded that the district had not diligently worked on the request and the lack of diligence amounted to a denial of her request. Id. The court rejected the district's argument that it had numerous large record requests that it was working on during that same time period. Id. First, the court noted, "administrative inconvenience or difficulty in producing records does not excuse lack of diligence." Id. at 95. Second, the court explained that the district's evidence suggested the delay was "was not due to overwhelming requests, but rather insufficient allocation of resources and lack of priorities." Id. Though the district submitted evidence that it was working on two other large requests during the time period of Cantu's request, the technology director who was assigned the request explained that she was also working on other unrelated programs during the summer and the district had declined her numerous requests for assistance, "claiming lack of available resources despite a significant contingency fund." Id. at 95.

Beidler disregards the significant factual distinctions between his claim and that of the parent in Cantu. Here, unlike the school district that failed to respond to Cantu's request within five days and did not meet its estimated production date, the County responded to Beidler's initial request within five days and provided its first installment on the estimated date. More importantly, the district not only ignored Cantu's emails, but also allowed five months to pass without producing any records responsive to her request, and it provided false information to Cantu

about the records office summer closure. In the present case, however, the County responded to Beidler's inquiries in a timely manner, provided installments every four to six weeks from May 2021 to June 2022, and provided information that proved accurate as to its ongoing installment estimates, as well as unrebutted evidence demonstrating its other efforts to satisfy the request.

Additionally, as Beidler concedes in briefing, the "County's production of records continues to this day." Constructive denial is when the agency has taken so little action that the effect is the same as if they had explicitly denied the request. No reasonable person would believe that the County had denied this request, particularly as, by the time of summary judgment, Beidler had received roughly two-thirds of the responsive PDF and Word pages, along with files in other formats, and admitted to continued receipt of files through the appellate stage of this case. As the County has neither actually nor constructively denied Beidler's request, his cause of action as to wrongful denial fails as a matter of law and summary judgment dismissal of that claim was proper.

B.      Beidler's Claims of Unreasonable Delay and Lack of Diligence

Beidler further relies on <u>Cantu</u> to argue that the County failed to allocate sufficient resources to the SCSO PDU to ensure the office could satisfy its obligations under the PRA.[6] According to Beidler, the County failed to adequately

---

[6] Beidler specifically asserts that the County has "deprioritized" his request by understaffing its PDU office. Appellant's Br. at 20. He argues that "a reasonable inference from the available record shows that the County prioritized — that is, worked on and completed — PRA requests that were received after Mr. Beidler's." Appellant's Br. at 20.

However, Beidler offers no evidence showing that Payne deprioritized his request by working on other requests, and he offers no authority which would require the County to complete his entire intermediate-complexity request before working on other standard requests. WAC 44-14-040 establishes the requirements for agencies responding to PRA requests and subsection (1)

- 13 -

staff the PDU office, which he asserts shows a lack of diligence by the County that has resulted in an "unreasonable" delay. The record does not support this contention.

The County submitted a declaration from Payne that stated the PDU was working on approximately 1,000 other requests at any given time while Beidler's request was being processed. Payne further declared that the PDU received an average of 645 new requests and closed an average of 653 requests each month. This evidence not only went unchallenged by Beidler, but he accepted these facts as true and argued that they conclusively supported his claim of lack of diligence based on understaffing. Payne's declaration went on to explain that, in June 2020, the PDU promoted an internal candidate who had "some public records experience" into a PIRS role. From January to June 2021, although the PDU was "short staffed by at least one employee at any given time," Payne took on additional work and PDU employees worked overtime to address the volume of PDRs received. Payne's declaration asserted that, in 2021, the PDU "spent approximately $23,000 in overtime to meet the public record demands." (Emphasis added.) In June 2021, PDU hired another PIRS who required one year of training from a senior PIRS, and necessarily detracted from the amount of time that the senior PIRS was able to spend on their regular duties. During the 2022 County budget cycle, the SCSO requested and was approved for funding to

expressly states, "The public records officer or designee will process requests in the order allowing the most requests to be processed in the most efficient manner." (Emphasis added.)

This provision of the WAC expressly contemplates that agencies are to organize their work in a manner which could result in completion of a simpler PDR during the pendency of a more complex request in order to ensure compliance with the law. The County's unrebutted evidence shows that the PDU processed the requests in the manner they determined to be the most efficient; Beidler's argument in this regard is meritless.

- 14 -

support two additional PIRS positions to start in 2022. Beidler offered no evidence to contradict these assertions in the various declarations offered by the County.

In Cantu, the court explained that "administrative inconvenience or difficulty in producing records does not excuse lack of diligence." 23 Wn. App. at 95. Beidler fails to recognize that the unrebutted evidence presented by the County does not show a lack of diligence. Unlike the district in Cantu that declined the technology director's "numerous requests for assistance" and asserted a "lack of available resources despite a significant contingency fund," the County here has continued to meet the substantial PDR demands on the SCSO despite having to spend significant funds on overtime pay. Id. While Beidler attacks the County's decision to hire two PIRS employees who required training and could not carry full workloads during the relevant period, he offers no evidence that the County's decision to do so was unreasonable under the circumstances.[7] And notably, Beidler ignores the fact that the County took steps to address the large number of requests it receives by working through the broader County budgeting process to add two new positions to the SCSO PDU in 2022.

On appeal, the County relies on two recent unpublished opinions from Division Two of this court that addressed whether an agency's actions were diligent in responding to a voluminous public records request on an installment basis.[8]

---

[7] Further, this argument appears to rest on an unarticulated assumption that the County somehow chose to hire employees who required additional training over other more experienced applicants. However, Beidler produces no evidence regarding the applicant pool or hiring decision for those positions to demonstrate that it was unreasonable for the County to select the employees who required training. Speculation and mere conclusory statements are insufficient to create a genuine issue of material fact. Elcon Const., 174 Wn.2d at 169.

[8] West v. Dep't of Fish & Wildlife, No. 54872-1-II (Wash. Ct. App. Feb. 8, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054872-1-II%20Unpublished%20Opinion.pdf; Twin Harbors Fish & Wildlife Advoc. v. Dep't of Fish & Wildlife,

Though West and Twin Harbors are unpublished, they are factually analogous and legally persuasive, and we adopt the reasoning set out therein.

West requested two large files from the Washington Department of Fish and Wildlife (WDFW): one totaled 4,355 pages while the other contained 1,756 records but no official page count. West, No. 54872-1-II, slip op. at 2 n.2. The following day, WDFW responded to West by acknowledging his request, providing links to its website, and advising West that it needed additional time. Id. at 3. Over two months after receiving the request, WDFW sent West the first installment of records. Id. at 4. Throughout the following year, WDFW continued to send installments every two to three months and, in June of 2020, it provided West with the sixth and final installment. Id. at 5-6. On review, we determined that WDFW acted with diligence and that the estimated response times it had provided to West were reasonable. Id. at 12-13. The holding on appeal was based on the following: (1) the request was voluminous and the records needed to be reviewed for exemptions which was "necessarily time consuming," (2) WDFW's record unit was dealing with their existing duties in addition to a high volume of other record requests, (3) WDFW lost two staff members during the relevant time period, and (4) the COVID-19 pandemic impacted response times when the staff was required to work from home. Id. at 11-13.

Twin Harbors also involved a PRA request to WDFW, this one seeking "any and all documents and communications" related to specific negotiations and

_____

No. 54849-6-II (Wash. Ct. App. Feb. 23, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054849-6-II%20Unpublished%20Opinion.pdf.
    While unpublished opinions have no precedential value and are not binding, this court may consider them where, as here, they are "necessary for a reasoned decision." GR 14.1(c).

proceedings over a 20-month period. No. 54849-6-II, slip op. at 2-3. The request was extremely broad and WDFW staff reviewed "approximately 100,000 records identified as potentially responsive." Id. at 8. Twin Harbors submitted the request in October 2016 and, as of July 2020, WDFW had provided 38 installments of records and was continuing to provide installments. Id. at 3, 9. As there was no dispute that WDFW was still providing regular installments by the time of dismissal, we held there was no denial under the PRA. Id. at 12. Further, the panel determined that WDFW's installment response was reasonable and did not result in an undue delay. Id. at 16. Critical to the holding were the facts that demonstrated WDFW responded within five days of the initial request, communicated with Twin Harbors regarding the scope of the request, dedicated considerable time to reviewing the approximately 100,000 potentially responsive records, and delivered installments in approximately one-month intervals. Id. at 16-17. The panel also noted the impact of COVID-19 impact on agency operations and that WDFW staff had additional existing duties and needed to respond to other public record requests. Id. at 17.

Although the requests at issue in West and Twin Harbors may have been larger than Beidler's, the considerations of each reviewing panel regarding alleged violations of the PRA are all relevant here. Beidler's request is voluminous and the records require a considerable amount of time to review. Through the relevant period, the County has continued to dedicate time to fulfilling Beidler's request and has provided him with regular installments in four- to six-week intervals. During this time, the PDU staff had additional obligations, handled many other PRA

requests, and dealt with staff shortages. Finally, as the record shows, the COVID-19 pandemic impacted the PDU's ability to process Beidler's request.

In briefing and at argument before this court, Beidler repeatedly emphasizes the fact that the County bears the burden to prove it has acted with diligence in responding to his request, but he fails to understand the procedural posture unique to summary judgment once an initial showing is made. In order to defeat the County's motion, when it put forth evidence in support of dismissal, the burden then shifted to Beidler to produce admissible evidence sufficient to demonstrate the existence of a genuine issue of material fact as to each element of his claim. Atherton, 115 Wn.2d at 516. Again, a material fact is one critical to the outcome of litigation, in whole or in part. Id. Mere speculation and conclusory statements are insufficient to show a genuine issue of material fact. Elcon Const., Inc., 174 Wn.2d at 169. Summary judgment is proper where the nonmoving party has failed to demonstrate an issue of material fact as to each element of the claim. Atherton, 115 Wn.2d at 516.

While correct that he is entitled to reasonable inferences in his favor, Beidler's opposition to summary judgment is based almost entirely on his own June 15, 2022 declaration, which makes much of his own experience working for the SCSO. For example, in discussing the DRB records, he starts with, "I know from my experience as the Undersheriff" and goes on to conclude that the information he seeks "is easily accessible." He later repeats this line of thought with regard to his discussion of the redaction of the DRB records, "based on my experience, I do not believe the extensive amount of time that it has taken to produce these records

is reasonable." Beidler also emphasizes how quickly he received similar records when he worked as a commissioned deputy and then undersheriff: "When I was employed with the Sheriff's office [sic], I requested that information countless times, and it was immediately produced." However, this assertion fundamentally fails to acknowledge that transmitting unredacted records internally in response to a request from law enforcement is profoundly distinct from a request made by a private citizen, or group thereof, under the PRA. Beidler is no longer a commissioned law enforcement officer; he is a private citizen and the records he seeks are subject to exemption and appropriate redaction before they may be released to him. His own opinions and conclusory statements about the internal processes of a division of the SCSO, a division separate from the one where he was employed,[9] are insufficient to rebut the evidence produced by the County in order to demonstrate a genuine issue of material fact and survive summary judgment.[10]

Another fatal flaw in Beidler's case is that he offers many opinions based on his experience as the undersheriff for Snohomish County, or in law enforcement generally, but he was not involved in this litigation as an expert witness. Opinion testimony is generally not permitted from lay witnesses. Ashley v. Hall, 138 Wn.2d 151, 156, 978 P.2d 1055 (1999). Even when opinions are offered by witnesses

---

[9] Nothing in Beidler's recitation of his employment history indicates that he ever worked in the PDU.

[10] In his June 15, 2022 declaration Beidler asserts, "I also know from my time at the Sheriff's office [sic] that there have been other public records requests in the past for substantially similar information that have been completed much more quickly than my request." However, he fails to offer any explanation as to how he would have come to have personal knowledge about these other PDRs, or otherwise demonstrate that they were in fact seeking "substantially similar information" both in type and scope. Without more, this broad statement is insufficient to demonstrate a genuine issue of material fact.

who have been qualified by the court as experts, they must have a proper evidentiary foundation and may not exceed the scope of the witness's expertise as identified by the court. Katare v. Katare, 175 Wn.2d 23, 38-39, 283 P.3d 546 (2012). Beidler's professional experience and training are extensively set out in both of his declarations, and their repetition in both his complaint and opposition to summary judgment suggests that he believed the court should accept his opinions and conclusions on the basis of his employment background. However, there is nothing in the record to indicate that the court qualified him as an expert. Further, his extensive experience in law enforcement does not render him qualified to opine on the County's response under the PRA simply because he was previously an employee of that same County department. See ER 701, 702. Notably absent from the recitation of his various credentials and training is any indication he was ever trained on the PRA generally, much less on the County's internal procedures for responding to an intermediate PDR, or that he was ever directly involved in fulfilling a PDR while he worked for the SCSO. Accordingly, his opinions about the processes used by the PDU, their hiring decisions, internal prioritization of the various incoming PDRs, or the County's diligence are not admissible evidence. Simmons v. City of Othello, 199 Wn. App. 384, 392-93, 399 P.3d 546 (2017). As such, we do not consider them in our de novo review of the summary judgment ruling.[11]

---

[11] At oral argument before this court, Beidler asserted this panel could review the sample DRB records he submitted as exhibits to his opposition for summary judgment to conclude that any necessary redactions are simple and routine enough that the County's delay in completing his request is unreasonable. Wash. Court of Appeals oral argument, Beidler v. Snohomish County, No. 84316-8-I (Mar. 2, 2023), at 20 min., 45 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023031130/?eventID=2023031130.

Even when viewing the admissible evidence before the court on summary judgment in the light most favorable to Beidler, the record shows no dispute of material fact concerning the diligence and timeliness of the County's response. Particularly where Beidler expressly agreed with much of the County's underlying factual framework regarding staffing, statistics on PDRs, and the processes utilized by the SCSO PDU. Simply disagreeing with the County's assertions as to its diligence is insufficient to defeat a summary judgment motion; once the County made a preliminary showing, the burden shifted to Beidler to produce admissible evidence to demonstrate that there was a genuine issue as to a fact that is material to the claim. See Elcon Const., Inc., 174 Wn.2d at 169; see also Atherton Condo., 115 Wn.2d at 516; see also Young, 112 Wn.2d at 225; see also White, 131 Wn.2d at 9. Beidler has failed to identify specific facts that sufficiently rebut the County's evidence and, therefore, also failed to raise any genuine dispute to the County's showing that the delay in responding to his request was reasonable or it was compliant with the PRA generally. Id. Accordingly, the trial court did not err in granting summary judgment dismissal as to this claim.

II.  Attorney Fees

Beidler requests attorney fees and costs pursuant to RCW 42.56.550(4) and RAP 18.1. Under the PRA, "Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the

---

However, this panel suffers from the same deficiencies as Beidler with regard to particularized training on the PRA or experience reviewing for and applying relevant redactions and their accompanying exemption codes. Accordingly, we decline his invitation to supplant the unchallenged declaration testimony provided by the County with our own speculation.

- 21 -

right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." RCW 42.56.550(4). Because we hold the County has neither denied Beidler's request nor failed to thoroughly and diligently respond to it, Beidler has not prevailed and is not entitled to attorney fees under the statute or the RAP. Consequently, his request is denied.

Affirmed.

_____

WE CONCUR:

_____        _____